UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. 05 CR 472 |
|---|---|
| v. | Hon. Sara L. Ellis |
| PHILLIP KING | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The United States of America, by JOHN R. LAUSCH, Jr., United States Attorney for the Northern District of Illinois, respectfully submits the following response to defendant Phillip King's motion for compassionate release (the "Motion").

As explained below, the Motion should be denied because the defendant has not met his burden of establishing that he has exhausted administrative remedies, nor has he established that a reduction of his sentence would be consistent with the applicable policy statement and the factors set forth in 18 U.S.C. § 3553.

## BACKGROUND

On September 20, 2005, a federal grand jury returned a 51-count indictment charging seventeen defendants, including Phillip King, for their participation in a multi-state drug trafficking organization. King and his co-defendants were charged with: conspiring to possess with intent to distribute and to distribute in excess of five kilograms of mixtures containing cocaine and in excess of one kilogram of mixtures containing heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); 34 counts of knowingly and intentionally using and causing to be used a communications facility in committing

the narcotics conspiracy charged in Count One, in violation of 21 U.S.C. § 843(b) (Counts 2, 4 through 8, 10 through 18, 20 through 22, 24 through 28, 31 through 33, 35, 38, 39, 42 through 43, 45, 46, and 50); 10 counts of knowingly and intentionally possessing with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Counts 23, 29, 30, 34, 36, 37, 40, 41, 47, and 48); 5 counts of interstate travel to facilitate the narcotics conspiracy charged in Count One, in violation of 18 U.S.C. § 1952(a)(3) (Counts 3, 9, 29, 44, and 49); and one count of money laundering, in violation of 18 U.S.C. § 1956(h) (Count 51). R.112. King was charged in Count 1, 6, 10, 13, 16, and 51 of the indictment.

King acted as a distributor for the drug trafficking organization in Kentucky. In or around February 2005, defendant King began receiving multi-kilogram loads of cocaine from the organization, including cocaine from a 30-kilogram load transported from Atlanta to Kentucky. King sold 25 kilograms of the cocaine in the Bowling Green area. In March 2005, King received an additional load of 16 kilograms of cocaine. King sold this second shipment in the Bowling Green area as well. In late March 2005, King received another 16 kilograms of cocaine for distribution. King's involvement with the organization came to an end after he stole approximately $300,000 of drug proceeds from the organization. R. 366.

King pleaded guilty to Count 1 of the indictment and was sentenced to 217 months in prison. R. 715. In sentencing the defendant, Judge Darrah noted that the defendant had "committed a very serious offense" but had cut his losses by cooperating with the government. The court noted that "even though you're a young man, your entire life has

2

been involved in criminal activity in one degree or another. You're going to pay a severe price for your conduct and for your criminal past." R. 828 at 12-13.[1]

On or about September 2, 2020, the defendant filed a motion seeking compassionate release on the ground that he wishes to see his gravely ill father. Motion ¶¶ 6, 16. For the reasons below, the Motion should be denied.

## ARGUMENT

### A. Legal Standard

As amended by Section 603(b) of the First Step Act of 2018, Pub. L. 115-391, Title 18, United States Code, Section 3582(c)(1)(A) provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

---

[1] King was previously convicted of the following offenses. The defendant was convicted of trafficking in marijuana in state court in Kentucky, on or about August 26, 1997, and received a sentence of probation. The defendant was convicted of trafficking in marijuana in state court in Kentucky, on or about August 20, 1998, and received a sentence of three years' incarceration. The defendant was convicted of conspiracy to distribute cocaine in state court in Kentucky, on or about October 31, 2001, and received a sentence of 10 years' incarceration. The defendant was convicted in state court in Kentucky on or about November 7, 2001, of trafficking in marijuana while in state custody and received a sentence of three years' incarceration. The defendant was convicted of escape in state court in Kentucky on or about November 13, 2002, and received a sentence of five years' incarceration.

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Direct of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Under this statute, in addition to finding "extraordinary and compelling" reasons for the reduction, the Court must find that a sentence reduction is consistent with applicable policy statement issued by the U.S. Sentencing Commission.

Pursuant to Congress's directive, the Sentencing Commission promulgated Sentencing Guideline § 1B1.13, which sets forth the Sentencing Commission's policy statement with respect to § 3582(c)(1)(A). Consistent with § 3852(c)(1)(A)(i), § 1B1.13 provides that a court may reduce a term of imprisonment, after considering the § 3553(a) factors, if three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) the reduction is consistent with the factors set forth in 18 U.S.C. § 3553, to the extent relevant. *Id.*

Thus, in order to obtain relief under § 3582(c)(1)(A)(i), defendant must show that:

(1) he has requested relief from the BOP and exhausted any administrative appeals in that process;

(2) there exist extraordinary and compelling reasons that warrant a sentence reduction;

(3) the requested reduction is consistent with the policy statements issued by the sentencing commission in Guideline §1B1.13, including the requirement that "the defendant is not a danger to the safety of any other person or to the community"; and

(4) the reduction is warranted in light of the factors listed in 18 U.S.C. § 3553.

## B. King Has Not Demonstrated Compliance with § 3582(c)(1)'s Exhaustion Requirement.

### 1. The Administrative Process

The Bureau of Prisons has established an orderly process for review of requests for reductions of sentence and compassionate release:

> A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden. Ordinarily, the request shall be in writing, and submitted by the inmate. An inmate may initiate a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing. The inmate's request shall at a minimum contain the following information:
>
> (1) The extraordinary or compelling circumstances that the inmate believes warrant consideration.
>
> (2) Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

28 C.F.R. § 571.61(a). The Bureau of Prisons "processes a request made by another person on behalf of an inmate [for example, defendant's counsel] in the same manner as an inmate's request." *Id*. § 571.61(b).

The Bureau of Prisons' regulations also establish procedures for the consideration and administrative review of compassionate release requests involving the Warden, General Counsel, and Director of the Bureau of Prisons. 28 C.F.R. § 571.62(a). If a request for compassionate release is denied at any level of the Bureau of Prisons' internal review process, the inmate is entitled to "written notice and a statement of reasons for the denial." 28 C.F.R. § 571.63(a). When an inmate's request is denied by the Warden, the "inmate may appeal the denial through the Administrative Remedy Procedure (28 CFR part 542, subpart B)." *Id*.

Consistent with the statutory exhaustion requirement, the Bureau of Prisons' program statement on compassionate release requests states that "an inmate may file a request for a reduction in sentence with the sentencing court after receiving a BP-11 response [from the Warden] under subparagraph (a), the denial from the General Counsel under subparagraph (d), or the lapse of 30 days from the receipt of such a request by the Warden of the inmate's facility, whichever is earlier." *See* Bureau of Prisons Program Statement No. 5050.50 (rev. Jan. 17, 2019), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited July 10, 2020). The Bureau of Prisons' regulations make clear that "[i]n the event the basis of the request is

6

the medical condition of the inmate, staff shall expedite the request at all levels." 28 C.F.R. § 571.62(c).

The Bureau of Prisons' receipt and consideration of compassionate release requests occurs against the backdrop of an annual reporting requirement to Congress. 18 U.S.C. § 3582(d)(3). By requiring the Bureau of Prisons to submit annual reports about its handling of compassionate release requests, Congress demonstrated that it clearly understood the importance of requiring inmates to submit requests through established Bureau of Prisons channels and intended that procedure to be followed.

### 2. King Has Not Complied with the Statutory Exhaustion Requirement.

Title 18, United States Code, Section 3582(c)(1)(A) provides that the court may reduce a defendant's term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ."

King's defense counsel maintains that it is his "understanding" that the defendant has exhausted the administrative remedy process. Motion ¶ 15. However, the defendant does not attach any such request, identify the date of such request, or the content of such request. Accordingly, the defendant has not met his burden of establishing that he has exhausted all administrative rights available to him, as required by the statute. *See*

7

*United States v. Gold*, 2020 WL 2197839, at *2 (N.D. Ill. May 6, 2020) (Bucklo, J.) (stating that, as the movant, defendant bears the burden to establish that he or she is eligible for a sentence reduction).

### 3. The Statutory Exhaustion Requirement is Mandatory and Cannot Be Waived by Courts.

When Congress enacted § 603 of the First Step Act, it included an exhaustion requirement to ensure that Bureau of Prisons officials would have the first opportunity to review and consider a defendant's request for a sentence reduction or compassionate release. Congress demonstrated its intent that the Bureau of Prisons be given a minimum of 30 days to review an inmate's request before the issue is brought to court, by permitting inmates to pursue relief from the court only after the completion of the administrative appeal process or, at a minimum, 30 days after the warden's receipt of the inmate's administrative request. The requirement serves the important function of permitting the initial review of the defendant's request to be conducted by BOP officials, who are in the best position to assess the propriety and feasibility of defendant's release.

The statutory exhaustion requirement for compassionate release motions is mandatory, and cannot be waived by courts. *See United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015) (holding § 3582(c)(2)'s criteria, while not jurisdictional, are mandatory); *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[w]here Congress specifically mandates, exhaustion is required"); *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016) (rejecting as

"freewheeling" lower court's creation of "special circumstances" exception to statutory exhaustion requirement and permitting only the exception expressly defined by statute).

Consistent with Supreme Court precedent and this Court's rulings in other cases, since the COVID-19 outbreak, no court of appeals has found § 3582(c)(1)'s exhaustion requirement to be waivable, and the vast majority of courts have found that the requirement cannot be waived. *See United States v. Allegra*, No. 15 CR 243, Dkt. No. 232 (N.D. Ill. Apr. 13, 2020); *United States v. Beck*, No. 11 CR 640 (N.D. Ill. June 1, 2020); *United States v. Manning*, No. 15 CR 50007 (N.D. Ill. Apr. 7, 2020); *United States v. Carter*, No. 18 CR 86-JMS-DML, 2020 WL 1808288, at *1 (S.D. Ind. Apr. 9, 2020*); United States v. Fevold*, No. 19 CR 150, 2020 WL 1703846, at *1 (E.D. Wis. Apr. 8, 2020) (denying compassionate release to FCI-Elkton prisoner because he failed to exhaust administrative remedies); *United States v. Albertson*, No. 16 CR 250-TWP-MJD, 2020 WL 1815853 (S.D. Ind. Apr. 8, 2020); *United States v. Brown*, No. 17 CR 111, 2020 WL 1703859 (E.D. Wis. Apr. 8, 2020); *United States v. Moskop*, No. 11 CR 30077, 2020 WL 1862636 (S.D. Il. Apr. 14, 2020).

Even if waiver were permitted, it would be inappropriate in this case. In light of the Attorney General's directives to BOP and BOP's corresponding actions, this is not a time when defendant's pursuit of administrative remedies within BOP could be deemed futile from an *ex ante* perspective, or otherwise provide a basis for waiving § 3582(c)(1)(A)'s exhaustion requirement. Thus, there is no basis here for excusing the statutory exhaustion requirement, even were that permitted by the statute. Pursuant to

the statutory framework that Congress has devised, BOP must be given the opportunity to make a decision concerning defendant's request prior to any intervention by the Court.

    C.    **King Has Not Established that Extraordinary and Compelling Reasons Warrant a Sentence Reduction.**

King argues that extraordinary and compelling reasons warrant his release: specifically, he argues that his father's illness constitutes an extraordinary and compelling circumstance meriting his immediate release.

A family illness, even a terminal one, is not extraordinary. It is regrettably commonplace that, as parents and loved ones age, they may face illness and death. Many inmates have had to endure a parent or other loved one passing away while they are incarcerated; this alone cannot possibly be thought to be an extraordinary circumstance justifying early release from prison. As Chief Judge Pallmeyer noted in denying bail pending appeal to the former Governor of the State of Illinois, missing the passing of a loved one is an unfortunate—but unexceptional—consequence of a lengthy term of imprisonment:

> This court takes no pleasure in depriving any defendant of his or her liberty. The court has had the painful duty to take such action in circumstances more compelling than these—where a young defendant with little education or resources is the sole support of small children, or is the only caregiver for a disabled relative, for example. Any sensitive judge realizes that a lengthy prison term effectively robs the convicted person of what we all value most: months and years with loved ones, some of whom will no longer be there when the sentence has been served. Mr. Ryan, like other convicted persons, undoubtedly wishes it were otherwise. His conduct has

>exacted a stiff penalty not only for himself but also for his family.

*Ryan v. United States*, 759 F.Supp.2d 975, 1014 (N.D. Ill. 2010).[2]

Indeed, the Sentencing Commission's policy statement regarding family circumstances as a grounds for compassionate release is appropriately cabined to reach family circumstances that may be extraordinary. Under that policy statement, family circumstances only establish a basis for compassionate release when they involve the death or incapacitation of the caregiver for the inmate's child or spouse and, with regard to a spouse, the inmate is the only person capable of fulfilling that caregiver role. U.S.S.G. § 1B1.13 cmt. n.1(C).

The defendant has failed to demonstrate that extraordinary and compelling circumstances exist in this case. The defendant maintains that his father is gravely ill; but, as noted above, that is not in and of itself an extraordinary event. Moreover, based on the materials submitted by the defendant, his father is receiving hospice care, and the defendant has not argued and cannot argue that his presence is necessary to provide care to his father. Indeed, King proposes to reside at a considerable distance from his father if he is released. Motion ¶ 7 (noting defendant's plan to reside approximately sixty miles away from his father if released). Other courts faced with similar claims—even in instances (unlike this one) where a defendant has claimed that he was needed to provide

---

[2] The judgment of the district court was ultimately affirmed. *See Ryan v. United States*, 688 F.3d 845, 847-48 (7th Cir. 2012) (tracing procedural history, including grant of *certiorari* by Supreme Court, vacating the court of appeals' first panel opinion).

critical care to an ailing parent—have denied relief under the First Step Act. *See United States v. Smith*, No. 2:11-cR-140-JVB-PRC, 2020 WL 5959714, at *2 (N.D. Ind. Oct. 8, 2020) (need to take care of four children, including mother who recently had a stroke are "not the type of family circumstances that amount to an extraordinary and compelling reason for compassionate release") (quoting *United States v. Root*, No. 1:11-CR-69-HAB, 2020 WL 4783635, at *3 (N.D. Ind. Aug. 18, 2020)); *United States v. Rodriguez*, No. 2:18CR145-PPS, 2020 WL 5627451, at *2 (N.D. Ind. Sept. 21, 2020) (extraordinary and compelling reasons do not exist where defendant fails to meet criteria set forth in U.S.S.G. § 1B1.13; family member suffering illness had alternate form of care); *United States v. Goldberg*, No. 12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. April 13, 2020) ("While certainly admirable, a desire to help care for one's elderly parents does not qualify as an "extraordinary and compelling reason" for release under U.S.S.G. § 1B1.13 . . . ."); *United States v. Bonel*, No. 4:14-CR-180 (4), 2020 WL 3470319, at *3 (E.D. Tex. June 25, 2020) (defendant's contention that she "is needed at home to help her grandmother," while commendable, does not meet the requirements for family circumstances that establish extraordinary and compelling reasons for release from imprisonment); *United States v. Baye*, No. 3:12-CR-00115-RCJ, 2020 WL 2857500, at *10 (D. Nev. June 2, 2020) (denying defendant's compassionate release motion to care for his widowed mother's deteriorating health); *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 15, 2019) (denying compassionate release motion to

care for defendant's ill mother because "[m]any, if not all inmates, [have] aging and sick parents").

Even were the court to determine that defendant has established an extraordinary and compelling reason for release, defendant would not automatically be entitled to relief under 18 U.S.C. § 3582(c)(1). Pursuant to the statute and applicable policy statement, the Court must also consider all other pertinent 18 U.S.C. § 3553(a) factors, including the seriousness of the offense, defendant's history and characteristics, the quality of his release plan, and the impact of BOP's efforts to maintain the safety of inmates.

These factors demonstrate that his early release is not warranted. This was a serious case, involving the defendant's personal participation in the distribution of over fifty kilograms of cocaine. Fifty kilograms of cocaine is the equivalent of thousands and thousands of individual doses, capable of poisoning and ruining many, many lives. As Judge Darrah noted at sentencing, the defendant had engaged in a life of crime. By the time of his sentencing in this case, he had racked up numerous felony convictions, including multiple convictions for drug trafficking offenses, as well as a conviction for escape. The defendant was undeterred from a life of crime, and received a lengthy sentence from Judge Darrah as a result. He should serve out the remainder of that sentence, and the Motion should be denied.

## CONCLUSION

For the reasons stated above, the government respectfully submits that defendant King's motion for compassionate release should be denied.

Dated: October 13, 2020

                              Respectfully submitted.

                              JOHN R. LAUSCH, JR.
                              United States Attorney

By:   /s/ *Amarjeet S. Bhachu*
        AMARJEET S. BHACHU
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 469-6212